Sandra MACK, on behalf of herself
and all others similarly
situated, Plaintiff,

v.

GENERAL MOTORS ACCEPTANCE
CORPORATION, Defendant.

Civil Action No. 95–T–1000–N.

United States District Court,
M.D. Alabama,
Northern Division.

Dec. 10, 1996.

C. Knox McLaney, III, Angela L. Kimbrough, McLaney & Associates, Montgomery, AL, James O. Latturner, Edelman & Combs, Chicago, IL, Lynn W. Jinks, III, Jinks, Smithart, Jackson & Daniel, L.L.C., Union Springs, AL, Cathleen M. Combs, Daniel A. Edelman, Adam B. Goodman, Edelman & Combs, Chicago, IL, for plaintiff.

Randall C. Morgan, Hill, Hill, Carter, Franco, Cole & Black, Montgomery, AL, Jess H. Dickinson, Craig A. Cowart, Page, Mannino, Peresich, Dickinson & McDermott, Gulfport, MS, for defendant.

## ORDER

MYRON H. THOMPSON, Chief Judge.

Upon consideration of the recommendations of the United States Magistrate Judge entered on November 21, 1996, and the objections filed by plaintiff on December 4, 1996, and after an independent review of the file, it is the ORDER, JUDGMENT, and DECREE of the court:

(1) That the recommendations of the United States Magistrate Judge are adopted;

(2) That the objections filed by plaintiff are overruled.

(3) That the motion for class certification filed by plaintiff on June 28, 1996, is denied;

(4) That the motion to intervene and to abate action filed by Shirley Wright on September 17, 1996, is denied; and

(5) That the application for preliminary injunction filed by plaintiff on October 4, 1996, is denied.

## RECOMMENDATION OF THE MAGISTRATE JUDGE

CARROLL, Chief United States Magistrate Judge.

## I. INTRODUCTION AND PROCEDURAL HISTORY

On July 27, 1995, the plaintiff, Sandra Mack, filed this action against General Motors Acceptance Corporation (GMAC). In her complaint, she alleges that General Motors Acceptance Corporation

engages in a practice of paying secret kickbacks to car dealers who procure financing for consumers at inflated rates. General Motors dealers customarily undertake to find financing for consumers in connection with automobile purchases. GMAC evaluates the consumer's credit and determines the rate at which it will accept a retail installment contract. In order to encourage dealers to do business with GMAC instead of competing financial institutions, GMAC allows the dealers to represent to consumers that their transactions have been approved at a rate higher than that at which they were actually approved by GMAC. The extra profit resulting from the difference between the rate approved by GMAC and the rate represented by the dealer is divided by GMAC and the dealer.

The plaintiff claims that GMAC's activities violate RICO (Count I), constitute fraud by suppression under Alabama law (Count II) and induce breach of fiduciary and contractual duties undertaken by the dealers (Counts III and IV). She seeks compensatory and punitive damages. This cause is currently pending before the court on a motion for class certification filed by the plaintiff on June 28, 1996. She seeks certification of a nationwide class of persons who satisfy the following criteria:

(1) They signed a retail installment contract with a car dealer that was assigned to GMAC;

(2) The finance charge on the retail installment contract is in excess of the finance charge at which GMAC approved the purchase of the contract; and

(3) The contract was signed within the period beginning July 27, 1991.

The defendants filed a response to the motion and the court set a hearing on the motion for September 18, 1996. At a pre-hearing conference held in this case on August 20, 1996, the parties indicated that the motion could be resolved without a hearing. The court then allowed the parties to file additional evidence and briefs on the class certification issue, and on September 18, 1996, the motion was deemed to be under submission.

## II. FACTS [1]

General Motors Acceptance Corporation is in the business of purchasing retail installment contracts from automobile dealers under a process known as GMAC's retail plan. According to the affidavit of Joyce Wiedman, a branch manager for GMAC in Birmingham, the retail plan requires the dealership to complete a customer statement. The dealer transmits the customer statement by facsimile, personal delivery, or computer transfer to GMAC. GMAC then analyzes the information provided by the dealership and makes a credit decision as to whether GMAC would be agreeable to purchasing a retail installment contract from the dealership. GMAC also determines and communicates the buy rate tier in which the application falls. Periodically, GMAC sets buy rates for various credit tiers. GMAC does not set a particular buy rate as the result of any particular contract offered by a dealer. The finance rate which the consumer ultimately pays is a matter of negotiation and agreement between the automobile dealership and its customer. GMAC is not informed of the rate agreed to by the dealer and its customer until it receives the signed contract for purchase from the dealer. The Annual Percentage Rate that the customer must pay is disclosed but no mention is made to the customer about the buy rate from GMAC to the dealership. GMAC as a matter of policy does not enter into direct financing transactions with retail customers and does not disclose its buy rates to those customers.

On April 20, 1992, the plaintiff Sandra Mack purchased a used 1990 Chevrolet Beretta from Strickland Chevrolet in Pelham, Alabama. Strickland undertook to find financing for the plaintiff and submitted the plaintiff's application and credit information to GMAC. GMAC approved the plaintiff's credit application and informed Strickland that it would purchase a retail installment contract financing the plaintiff's transaction at the buy rate. Strickland then prepared a Retail Installment Sale Contract listing the plaintiff as the Buyer and Strickland Chevrolet as the creditor. Ms. Mack agreed to pay interest at an APR of 21.5%. The "buy" rate for Ms. Mack's contract was 16.75%. Strickland Chevrolet and GMAC then split the amount of money generated by the difference between the interest rate charged the plaintiff and the "buy" rate.[2] Since July 27, 1991, GMAC has purchased over 7 million retail installment contracts from dealers under its retail plan.

## III. DISCUSSION

### A. THE THRESHOLD REQUIREMENTS— Rule 23(a)

Rule 23(a) of the Federal Rules of Civil Procedure specifies four prerequisites to maintaining a suit as a class action:

One or more members of a class may sue or be sued as representative parties on behalf of a class only if the (1) class is so numerous that joinder of all members is impracticable, (2) there are questions of

1. In stating the facts, the court takes into account the well-settled principle of law that while the court may look beyond the allegations of the complaint in determining whether a class should be certified, an assessment of the plaintiff's likelihood of success on the merits would be inappropriate. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 722 (11th Cir.), *reh'g denied*, 832 F.2d 1267 (11th Cir.1987).

2. Excerpts of deposition of David Johnson, plaintiff's evidentiary submission filed September 17, 1996, Exhibit B.

law or fact common to the class, (3) the claims or defenses of the representative party are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately represent the interests of the class.

The burden is on the party who seeks to certify a suit as a class action to show that the prerequisites of Rule 23(a) are established. *Nelson v. United States Steel Corp.,* 709 F.2d 675, 679 (11th Cir.1983); *Earnest v. General Motors Corp.,* 923 F.Supp. 1469, 1473 (N.D.Ala.1996).

### B. NUMEROSITY—Rule 23(a)(1)

The plaintiff seeks certification of a class of persons who signed retail installment contracts and agreed to pay an interest rate in excess of the buy rate paid by GMAC to purchase those installment contracts from the dealer. The evidence before the court shows that GMAC purchased 7 million installment contracts from dealers during the relevant period of time. Although there is no evidence which would establish the exact number of class members, there is a logical inference that the class could easily number in the hundreds of thousands, perhaps in the millions. No one suggests that the numerosity requirement is not met.

### C. COMMONALITY—Rule 23(a)(2)

■ Rule 23(a)(2) requires that there be questions of law or fact common to the members of the class.[3] It is not necessary that all questions of law or fact raised in the litigation be common. Rather, there need only be a single issue common to members of the class. *Johnson v. American Credit Co. of Georgia,* 581 F.2d 526 (5th Cir.1978). In this case, the plaintiff has alleged that GMAC practices fraud against persons who finance automobiles by providing kickbacks to deal-

ers who procure financing for those automobiles through GMAC. The plaintiff's claim is that GMAC commits violations of law by allowing automobile dealers to charge an interest rate higher than the "buy" rate. There is clearly at least one issue of fact and law raised by this litigation which is common to the members of the class and the commonality requirement is satisfied.

### D. TYPICALITY AND ADEQUACY OF REPRESENTATION[4]

#### —Rule 23(a)(3) & (4)

■ The typicality and adequacy of representation requirements serve the important purpose of protecting the legal right of class members. *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2370 n. 13, 72 L.Ed.2d 740 (1982). The typicality requirement focuses on the interests of the class representatives. As the United States Supreme Court noted in *General Tel. Co. v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 1706, 64 L.Ed.2d 319 (1980), the "typicality requirement is said to limit the class claims to those fairly encompassed by the named plaintiff's claims." Stated another way, "typicality" exists when a plaintiff's injury arises from or is directly related to a wrong to a class and that wrong includes the wrong to the plaintiff. *See In re American Medical Systems, Inc.,* 75 F.3d 1069, 1082 (6th Cir.1996); *see also Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1557 (11th Cir.), *cert. denied,* 479 U.S. 883, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986) (the claims actually litigated in the suit must simply be those fairly represented by the named plaintiffs).

■ The adequacy of representation requirement focuses on the ability of the class representative to assert and defend the class with "forthrightness and vigor." *Kirkpatrick*

---

**3.** The focus of the commonality requirement and the numerosity requirement are interdependent as is the focus of the typicality and adequacy of representation requirements.

Consideration of the common questions issue requires an answer "common to whom?" Correspondingly, when one considers the impracticability of joinder, one necessarily perceives this issue with respect to the common questions raised for adjudication. The other

two prerequisites—typicality of claims and adequacy of representation—focus on the desirable qualifications of the plaintiff who seeks to represent the class.

1 *Newberg on Class Actions,* § 3.10 at 3–47 (3d ed. 1992).

**4.** The inquiries under both of these requirements are essentially the same, *Coleman v. Cannon Oil Co.,* 141 F.R.D. 516, 522 (M.D.Ala.1992).

*v. J.C. Bradford & Co.,* 827 F.2d at 726; *see also American Medical Systems,* 75 F.3d at 1083 (adequacy of representation means that the class representative has common interests with the class and will vigorously prosecute the interests of the class through qualified counsel). The inquiry into whether the named plaintiff will represent the class with sufficient forthrightness and vigor invokes questions about the financial status of the plaintiff, *see Schatzman v. Talley,* 91 F.R.D. 270, 273 (N.D.Ga.1981), and the competence of class counsel. *Griffin v. Carlin,* 755 F.2d 1516, 1532 (11th Cir.1985). The class representative's personal finances, however, are not particularly important. A plaintiff of limited financial means can still be a class representative in a major class action because counsel have a greater financial interest in obtaining successful resolution of a class suit than do the individual members. *See Deposit Guaranty Nat. Bank v. Roper,* 445 U.S. 326, 338–39, 100 S.Ct. 1166, 1173–74, 63 L.Ed.2d 427, *reh'g denied,* 446 U.S. 947, 100 S.Ct. 2177, 64 L.Ed.2d 804 (1980). Thus, the subjective desire to vigorously prosecute the case is supplied by counsel. *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d at 727. There is no question in the court's mind about the skill of plaintiff's counsel and their interest in this case. They have vigorously and competently represented the plaintiff and the putative class.

■ In summary, the court finds that the plaintiff's claims are typical of those of the class she represents. She paid an interest rate on her car loan which was 4.75% over the buy rate.[5] The court also finds that she is an adequate class representative. She is represented by skilled, well-financed counsel who have expertise in consumer litigation. The typicality and adequacy of representation requirements are satisfied.

5. The fact that counterclaims may be asserted against some class members is not a sufficient ground upon which to find that Ms. Mack is not an adequate class representative. *See, e.g., Roper v. Consurve, Inc.,* 578 F.2d 1106, 1116 (5th Cir. 1978), *aff'd sub nom. Deposit Guaranty National Bank v. Roper,* 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980) (the potential assertion of

### E. RULE 23(b)(3)

■ The plaintiff seeks certification of a nationwide class under the provisions of Rule 23(b)(3). Before a class can be certified under this provision of the class action rule, the court must find that "the questions of law or fact common to the members of the class predominate over questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In deciding whether the predominance and superiority requirements are met, the court may take into account variations in state law, *Castano v. American Tobacco Company,* 84 F.3d 734, 740 (5th Cir.1996), and problems of manageability. *See Andrews v. American Telephone & Telegraph Co.,* 95 F.3d 1014, 1023 (11th Cir.1996). It is, therefore, important to determine whether there are variations in state law or manageability problems which will foreclose the certification of a class action in this case.

#### 1. The State Law Claims

■ The plaintiff alleges that GMAC allows automobile dealers to charge consumers a higher rate of interest than GMAC offers to the dealer and that GMAC and the dealer both profit financially from charging a consumer the higher rate. In the plaintiff's case, the dealer agreed to finance the plaintiff's car purchase at an APR of 21.5% which was a rate almost 5% higher than the rate at which GMAC had agreed to buy the retail installment contract from the dealer. The plaintiff contends that GMAC's actions in allowing the dealer to charge an interest rate higher than the "buy" rate constitutes fraud by suppression, inducement of breach of fiduciary duty and inducement of breach of contract. The plaintiff seeks to certify a nationwide class, numbering in the hundreds of thousands or perhaps millions, with regard to these issues.[6] That request is fraught with

counterclaims against a few members of the class cannot be allowed to defeat an otherwise valid class action).

6. As previously noted, GMAC has purchased 7 million retail installment contracts from automobile dealers during the relevant time frame.

peril on a number of fronts. The first concerns the elements of proof on the state law claims and the legal and factual problems they present.

The elements of the class-wide fraud claims are essentially the same no matter which state law is applied. Under the law of every state, a plaintiff seeking to prevail on a fraud by suppression claim must show, *inter alia*, a duty to disclose and detrimental reliance on the part of the plaintiff. *See, e.g., Roddenberry v. Roddenberry*, 44 Cal.App.4th 634, 51 Cal.Rptr.2d 907 (1996); *Ballard's v. North American Land Dev. Corp.*, 677 So.2d 648 (La.Ct.App.1996); *Lubore v. RPM Associates, Inc.*, 109 Md.App. 312, 674 A.2d 547 (1996); *Stiley v. Block*, 130 Wash.2d 486, 925 P.2d 194 (1996); *Duck Head Apparel Co. v. Hoots*, 659 So.2d 897, 904 (Ala.1995); *Butts v. Southern Clays, Inc.*, 215 Ga.App. 110, 450 S.E.2d 244 (1994). Under well-settled law, the duty to disclose may arise either from a confidential relationship between the parties or from the particular facts and circumstances of a particular case. *See Townsend Ford, Inc. v. Auto Owners Insurance Co.*, 656 So.2d 360 (Ala.1995); *see also Roddenberry v. Roddenberry, supra; Lubore v. RPM Associates, Inc., supra; First Security Bank of Utah N.A. v. Banberry Development Corp.*, 786 P.2d 1326 (Utah 1990). Thus, resolution of each of the class member's fraud claims will involve resolution of two important issues—(1) whether the relationship between GMAC and the customer is a relationship which state law regards as a confidential relationship which requires disclosure, and (2) if there is no legal duty to disclose, do the facts and circumstances of each case create such a duty. Resolution of these two issues will require an examination of the laws of each of the 50 states and an examination of the facts of each claim. As the Fifth Circuit has recently noted, states impose varying standards to determine when there is a duty to disclose. *Castano v. American Tobacco Company*, 84 F.3d at 743.[7] The recently decided case of *Bramlett v. Adamson Ford and Ford Motor Credit Company*, No. 2950526, 1996 WL 342283 (Ala.Civ.

App.1996), is instructive on the problem. The claim made by the plaintiff in *Bramlett* against Ford Motor Credit is identical to the claim made by the plaintiff in this case—*i.e.* that the finance company failed to disclose an agreement between the finance company and the automobile dealer whereby the finance company purchased the plaintiff's financing contract at a lower interest rate than the plaintiff had agreed to pay. The Alabama Court of Civil Appeals made it clear that the question of whether there was a duty to disclose the difference between the "buy" rate and the rate charged the customer depends on the facts and circumstances of each case. As the court noted, "We conclude that although § 5–19–6 does not impose a duty to disclose a discount in a consumer credit transaction, that section does not mean that a duty to disclose such a discount cannot arise from other circumstances." *Bramlett*, 1996 WL 342283 at *3. The court went on to find that a duty to disclose arose from the fact that the plaintiff had asked an agent of the dealer "why the cost of financing was so high" to which the agent responded that the interest rate was high because the plaintiff was a poor credit risk. *Id.* at *2.

The law as stated by the Alabama court is consistent with the general law on fraud in other states which emphasizes that the facts of each case must be examined to determine whether there is a duty to disclose. The impact of this law, however, on the class certification decision, is fatal. Before the court can determine even the threshold liability of GMAC to a class member, the court will have to examine all of the facts and circumstances of the transaction between the class member and the automobile dealer to determine whether a duty to disclose arose under the applicable state law. Such a determination will involve literally hundreds of thousands if not millions of individual factually complex hearings.

This difficulty with determining whether there is a duty to disclose is not the end of the problem. In order to prove fraud, there

---

7. The *Castano* court contrasted the law of Utah which does not impose a duty to disclose when the transaction is made at arms length and the

law of Alabama which, according to the court, uses a "flexible standard based on the transaction and relationship of the parties."

must be proof of reliance. As the Fifth Circuit also recently noted, the law on reliance differs from state to state. "In a fraud claim, some states require justifiable reliance on a misrepresentation, while others require reasonable reliance (citations omitted)." *Castano*, 84 F.3d at 743. The reliance problem is compounded by the fact that there is an automobile dealer in every class claim who is not a defendant, yet who had contact with both GMAC and potential class members. As noted previously, GMAC had no direct contact with any class members. GMAC's function was to approve the credit application at arms length from an application provided by the dealer and to buy the retail installment contract from the dealer at a particular rate. Resolving the issue of reliance will require the court to examine the representations made by each dealer and his/her employees to each claimant. There is a seemingly endless permutation of facts which the court will have to examine to determine the validity of each class member's claim.

Again, the *Bramlett* case is instructive on the problems caused by the reliance issue. The plaintiff in *Bramlett* was experienced in the purchasing and financing of automobiles, a factor which militated against a finding that the plaintiff relied to his detriment on the fraudulent suppression. As the court noted, however, the plaintiff's skill in the automobile market is not the only factor to consider:

> Although the simple statement that Adamson could obtain the best financing might not have been justifiably relied on by a buyer of Bramlett's experience, that statement was only part of the representation made to Bramlett. The additional representation that the rate was high because of Bramlett's credit history implies that Adamson checked all the possibilities and was unable to provide a better rate. A question of fact as to justifiable reliance can be raised by the entire context of a conversation as it is in these circumstances.

*Bramlett*, 1996 WL 342283 at *4. It is clear to the court that resolution of the reliance issue will require the court to examine the background of each individual class member

and the conversations between each class member and the automobile dealer and his/her agents. There is no way to resolve the reliance issue on a class-wide basis.

This case is the antithesis of a class action. Indeed, in this case, the issues relating to the individual claims overwhelm and muddle any class issues which may exist. The legal problems associated with varying state law and the factual problems associated with the proof of the fraud claims make the plaintiff's state law claims wholly inappropriate for class treatment. The common questions of law and fact relating to GMAC's alleged fraud do not predominate over questions affecting only individual class members and a class action is not a superior method for adjudicating those claims. *See Andrews v. American Telephone & Telegraph Co.*, 95 F.3d at 1023 (mail and wire fraud allegations are not wholly subject to class-wide resolution); *Castano v. American Tobacco Corp.*, 84 F.3d at 745 (according to both the advisory committee's notes to Rule 23(b)(3) and another decision, a fraud class action cannot be certified when individual reliance will be an issue).

The same problems which plague the plaintiff's fraud claims also plague the plaintiff's inducement of breach of contract and inducement of fiduciary duty claims. Resolution of those claims on behalf of a class will require the court to examine the facts and circumstances of each individual case to determine what the dealer did or did not do with regard to financing because the plaintiff's agency theory which is at the heart of these claims is based on an allegation that the dealer undertook the duty of procuring financing.

As if the liability issues were not problematic enough, the resolution of the damages issues on the state law claims would also be difficult because the plaintiff seeks punitive damages on behalf of the class. As the decision of the United States Supreme Court in *BMW of North America v. Gore*, ―― U.S. ――, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), makes clear, the treatment of punitive damages varies from state to state. In Alabama, for example, there is no cap on punitive damages while in other states there are.

Thus, each claim will have to be examined in light of the punitive damages law of that state.

As noted above, resolution of the class issues in this case would require the court to apply differing issues of state law to an endless combination of facts in perhaps a million cases. The words of another court aptly describe the problems with this case.

> The proposed class action suffers serious problems in both efficiency and fairness. In terms of efficiency, a class of this magnitude and complexity could not be tried. There are simply too many uncommon issues, and the number of class members is surely too large. Considered as a litigation class, then, the difficulties likely to be encountered in the management of this action are insurmountable.

*Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 632–633 (3rd Cir.), *cert. granted,* —— U.S. ——, 117 S.Ct. 379, 136 L.Ed.2d 297 (1996).

The plaintiff has failed to establish the necessary elements of predominance and superiority and this case may not be certified as a nationwide class action on the state law claims.[8]

### 2. The RICO Claims

The plaintiff also claims that the GMAC's actions constitute racketeering activity in violation of the federal RICO statute, 18 U.S.C. § 1962(c). In order to prevail on this type of RICO claim, a plaintiff must prove that the culpable defendant is conducting an enterprise, as that term is defined in the statute, through a pattern of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). An act of racketeering also referred to as a predicate act, is defined to include acts of mail and wire fraud. 18 U.S.C. § 1961(1). A pattern of racketeering activity is shown when a racketeer commits at least two distinct but related predicate acts. *Bank of America Nat'l Trust & Sav. Ass'n v. Touche Ross & Co.*, 782 F.2d 966, 971 (11th Cir.1986). The plaintiff in this case claims that GMAC engaged in violations of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. 1343 (wire fraud) in furtherance of its alleged kickback scheme. Specifically, the plaintiff alleges that

(1) GMAC sent information concerning the kickback program to dealers via United States mails;

(2) GMAC received information about prospective customers via the United States Mail from the customer, the dealer, and the customer's employer, banks, creditors, and other sources of credit information;

(3) GMAC received through modem and fax transmissions and the U.S. mails copies of borrowers' credit reports issued by out-of-state agencies;

(4) GMAC faxed or mailed the processed loan application of plaintiff and each class member for final loan approval;

(5) Once approved, GMAC mailed or faxed back to the dealer the final approval sheet listing the rates and terms for the loan, and specifying any final conditions needed for the loan. The approval sheets contained the amount which the dealer was to receive from GMAC after the closing;

(6) GMAC invited borrowers to pay by mail and received via United States Mails monthly loan payments from borrowers;

(7) GMAC sent default notices via United States Mails;

(8) GMAC sent via the United States Mails notices and other documents necessary to enforce its right to payment against its collateral, such as notices of repossession and

---

**8.** The plaintiff is a putative member of a 23(b)(3) class which has been certified in the Circuit Court of Pickens County, Alabama. That class is defined as

> Any person who is a resident of Alabama at the time of their purchase of a motor vehicle from a motor vehicle dealer located in Alabama where such purchase was made through a Re-

tail Installment Sales Contract with the Alabama Motor Vehicle dealer and where the purchaser's installment sales contract was sold by the Alabama motor vehicle dealer to General Motors Acceptance Corporation.

The period for opting out of that class has not yet begun.

notices required in some states before title to a repossessed vehicle may be transferred.[9]

 The elements of mail and wire fraud are identical. *Carpenter v. United States*, 484 U.S. 19, 25 n. 6, 108 S.Ct. 316, 320 n. 6, 98 L.Ed.2d 275 (1987). Mail or wire fraud exists when a person (1) intentionally participates in a scheme to defraud another of money or property, and (2) uses the mails or wires in furtherance of that scheme. *United States v. Downs*, 870 F.2d 613, 615 (11th Cir.1989). Additionally, however, in the RICO context "... when the alleged predicate act is mail or wire fraud, the plaintiff must have been the target of the scheme to defraud and must have relied to his detriment on the misrepresentations made in furtherance of that scheme." *Pelletier v. Zweifel*, 921 F.2d 1465, 1499–1500 (11th Cir.), *cert. denied*, 502 U.S. 855, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991).[10]

Because there are individual issues of reliance on the mail and wire fraud claims that are at the heart of the plaintiff's RICO claims, a class such as the plaintiff seeks to have certified would be a managerial nightmare. Rather than lend themselves to a comprehensive and uniform approach, the class-wide RICO claims will require a case-by-case analysis of the actions of GMAC, each individual dealer and each individual class member to determine whether there was reasonable reliance. For that reason, the Eleventh Circuit has recently held that the certification of a nationwide class of claimants under RICO where there were allegations of mail and wire fraud was inappropriate because such a class simply was not manageable. *Andrews v. American Telephone and Telegraph Company*, 95 F.3d at 1023–24 (the class' mail and wire fraud claims are not wholly subject to class-wide resolution); *see also Alabama v. Blue Bird Body, Co.*, 573 F.2d 309, 328–29 (5th Cir. 1978). Accordingly, this court concludes that the plaintiff has failed to satisfy the predomi-

nance and superiority requirements of Rule 23(b)(3) with regard to their RICO class and the class may not certified.

## IV. CONCLUSION

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that the motion for class certification filed by the plaintiff on June 28, 1996 be DENIED.[11]

---

9. Plaintiff's complaint at 11–12.

10. The reliance standard is "reasonable reliance." *See United States v. Brown*, 79 F.3d 1550, 1557 (11th Cir.1996).

11. As previously noted, the plaintiff is a member of a class which has been certified against GMAC in state court. She may prosecute her claim in that action or opt-out and continue with her claim in this court.