Jeff C. BRIGGS, on behalf of himself
and all others similarly situated,
Plaintiffs,

v.

COUNTRYWIDE FUNDING CORPORA-
TION and Madison Equity Mort-
gage Co., Inc., Defendants.

No. CIV.A. 95–D–859–N.

United States District Court,
M.D. Alabama,
Northern Division.

Sept. 29, 1997.

See also 949 F.Supp. 812.

Richard H. Gill, Copeland, Franco, Screws & Gill, P.A., Montgomery, AL, William J. Cornwell, William U. Norwood, Pope, McGlamry, Kilpatrick & Morrison, Atlanta, GA, C. Neal Pope, Michael L. McGlamry, Wade H. Tomlinson, Jay F. Hirsch, Pope, McGlamry, Kilpatrick & Morrison, Columbus, GA, C. Knox McLaney, III, McLaney & Associates, Montgomery, AL, Lynn W. Jinks, III, L. Bernard Smithart, Jinks, Smithart, Jackson & Daniel, L.L.C., Union Springs, AL, Angela L. Kimbrough, Parsons & Sutton, Tuscaloosa, AL, for plaintiff.

John H. Morrow, Richard H. Monk, III, Matthew H. Lembke, Bradley, Arant, Rose & White, Birmingham, AL, John C. Englander, Thomas M. Hefferon, Goodwin, Procter & Hoar, Boston, MA, for Countrywide Funding Corporation.

Randall B. Perry, House, Perry & Kavanaugh, Huntsville, AL, for Madison Equity Mortgage Co., Inc.

Richard H. Gill, Copeland, Franco, Screws & Gill, P.A., Montgomery, AL, C. Neal Pope, Pope, McGlamry, Kilpatrick, Morrison, Columbus, GA, C. Knox McLaney, III, McLaney & Associates, Montgomery, AL, Lynn W. Jinks, III, Jinks, Smithart, Jackson & Daniel, L.L.C., for Tom McGregor.

### ORDER

DE MENT, District Judge.

This cause is now presented to the court on the Recommendation of the Magistrate Judge, filed September 10, 1997, and plaintiffs' objection thereto, filed September 23, 1997.

The court has carefully read the recommendation and objection and is of the opinion that said recommendation is well taken and is due to be adopted, approved and affirmed. It is, therefore,

CONSIDERED, ORDERED and ADJUDGED as follows:

1. That plaintiffs' objection be and the same is hereby OVERRULED;

2. That the Recommendation of the Magistrate Judge in this cause be and the same is hereby ADOPTED, APPROVED and AFFIRMED; and

3. That plaintiffs' motion for class certification be and the same is hereby DENIED.

## RECOMMENDATION OF THE MAGISTRATE JUDGE

COODY, United States Magistrate Judge.

### INTRODUCTION

This case arises out of a residential mortgage loan funded by Countrywide Funding Corporation ("Countrywide") and brokered by Madison Equity Mortgage Co., Inc. ("Madison"). The plaintiff, Jeff C. Briggs, seeks to recover on behalf of himself and other persons similarly situated, for Countrywide and Madison's alleged fraud and violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA") in connection with residential mortgage loan closings. The case is before this court on the plaintiff's motion for class certification, as amended on September 10, 1996. In his motion, the plaintiff seeks to certify two classes of individuals defined as: (1) All persons in the United States who obtained a mortgage loan originated by Countrywide or through a broker with Countrywide's participation and who paid charges imposed by Countrywide or the broker which violated RESPA—the RESPA, nationwide class; (2) All persons in the State of Alabama who obtained a mortgage loan from Countrywide and/or Madison and were charged excessive fees—the fraud, statewide class.

The motion is pending before the court on the briefs of the parties and oral argument of counsel heard on June 4, 1997. Upon consideration of the briefs and argument of counsel, the court concludes that the plaintiff's motion for class certification should be denied.

### FACTS

The plaintiff and his wife obtained an adjustable rate loan in the amount of $42,300 from Madison, a mortgage broker based in Huntsville. The loan closed on September 23, 1994. To fund the loan, Madison utilized a process called "table funding" whereby Madison would obtain the loan funds from a wholesale lender and would sell the plaintiff's loan to that lender upon closing. Madison planned to sell the loan to AmSouth, a wholesale investor, but ran into problems because the plaintiff did not qualify for private mortgage insurance ("PMI") which was required by AmSouth. Instead, Madison arranged to sell the loan to Countrywide which has a special program making PMI available to borrowers with poor credit histories. The plaintiff had no contact with Countrywide until after the loan closed.

At the loan closing, Briggs received and signed documents which disclosed the existence, origin, and precise amount of all fees charged in connection with the refinancing. In connection with the closing, Countrywide paid Madison a "premium" directly. This payment is a way for Madison to receive compensation for its services, financed over the life of the loan through the interest rate Briggs agreed to pay. Madison's total compensation from all sources received for its services on plaintiff's loan was $1,624.75.

Countrywide has 56 wholesale centers throughout the country and carries on business with over 4,000 approved brokers nationwide. During the one-year period encompassed by the plaintiff's RESPA claims [1], Countrywide's wholesale division handled more than 77,056 loans which, like the plaintiff's loan, were originated by brokers. The closing forms used by Countrywide and its brokers vary from state to state because of each state's different system of regulating mortgage loans.

In his complaint, the plaintiff alleges claims for fraud and a violation of RESPA. Specifically, he claims Madison and Countrywide misrepresented that the charges imposed were legitimate and necessary. He further claims that the charges assessed him by Madison and Countrywide were payments for services that were "not actually provided or only nominally provided, or which represent compensation for the referred business." The plaintiff also asserts that the premium payment of $528.75 made directly by Countrywide to Madison was an illegal "kickback" under RESPA.

Specifically, the plaintiff pursues his claims under RESPA § 8(a) which states as follows:

---

1. RESPA contains a one-year limitations period.

12 U.S.C. § 2614.

No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

RESPA § 8(a), 12 U.S.C. § 2607(a). He also pursues his claims under RESPA § 8(b), which prohibits giving or receiving:

any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

RESPA § 8(b), 12 U.S.C. § 2607(b).

The defendants deny the plaintiff's allegations and also rely on RESPA § 8(c):

Nothing in this section shall be construed as prohibiting ... (2) the payment to any person of a *bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed.*

RESPA § 8(c), 12 U.S.C. § 2607(c) (emphasis added). Furthermore, the defendants point to the U.S. Department of Housing and Urban Development's ("HUD") ruling that amounts paid to brokers which bear a "reasonable relationship to the market value of the goods or services provided" fall within the safe harbor of § 8(c) and do not violate the statute. 24 C.F.R. § 3500.14(g)(2).

## DISCUSSION

To obtain certification of a class, the plaintiff bears the burden of proving that he meets each of the four prerequisite elements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and one of the three subsets of Rule 23(b). *See Hudson v. Delta Air Lines,* 90 F.3d 451, 456 (11th Cir.1996). Because the plaintiff seeks certification under 23(b)(3), he also must demonstrate that common questions of law and fact predominate over individual issues and that the class mechanism is a superior means to litigate the rights which the repre-

sentative seeks to assert on behalf of others. *See Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 2245–46, 138 L.Ed.2d 689 (1997); *Andrews v. AT & T,* 95 F.3d 1014, 1023 (11th Cir.1996).[2]

The merits of the plaintiffs' claims is not an issue before the court when determining the propriety of class certification. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.") However, "evidence relevant to the commonality requirement is often intertwined with the merits." *Nelson v. United States Steel Corporation,* 709 F.2d 675, 679 (11th Cir.1983). Thus, it sometimes is necessary "to probe behind the pleadings before coming to rest on the certification question." *General Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

In *Amchem* the Court recently explained the purpose of Rule 23(b)(3) class certification:

*Framed for situations in which "class-action treatment is not clearly called for" as it is in Rule 23(b)(1) and (b)(2) situations, Rule 23(b)(3) permits certification where class suit "may nevertheless be convenient and desirable."* ... To qualify for certification under Rule 23(b)(3), a class must meet two prerequisites beyond the Rule 23(a) prerequisites: Common questions must "predominate over any questions affecting only individual members"; and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." *In adding "predominance" and "superiority" to the qualification-for-certification list, the Advisory Committee sought to cover cases "in which class action would achieve the economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."*

---

**2.** The court pretermits discussion of Rule 23(a) prerequisite elements because it finds that this

case should not proceed as a class action under Rule 23(b)(3).

*Amchem, supra,* at 2245–46, 117 S.Ct. 2231 (citations omitted)(emphasis added). Further, the Court highlighted the Advisory Committee's instruction to courts to take a "close look" at a case before accepting it as a 23(b)(3) class action. Such factors pertinent to a court's "close look" at the predominance and superiority prongs include:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Id.* To resolve the predominance inquiry, the court must look closely at the questions of law and fact involved in the plaintiff's RESPA and fraud claims to determine whether these questions are common to all class members and predominate over questions relative only to individuals.

## I. THE RESPA NATIONWIDE CLASS

For the plaintiff to prevail under RESPA §§ 8(a) and (b), he must prove under § 8(c) that a fee was charged "other than for services actually performed." *See* 24 C.F.R. § 3500.14(c). The defendants argue that to test this theory, the trier of fact would need to examine what was done in exchange for each fee the plaintiff paid and that such an individualized inquiry would need to be conducted with respect to each of the 77,056 loan transactions in the proposed class. The defendants further argue that the reasonableness inquiry under 8(c) requires an examination of the facts and circumstances of each loan. *See* 24 C.F.R. § 3500.14(g).

In an early brief, the plaintiff argued, without citing any support, that the conduct of the some 4,000 brokers with which Countrywide does business was standard in respect to the broker's services provided and fees charged to the customer. Additionally, the plaintiff made the unsupported claim that the forms used in each of the 77,056 transactions were standardized. The defendants, however, have established to this court's satisfaction that the precise activities performed by the brokers and the prices charged for the work varied from customer to customer in each of the 77,056 transactions. The mere fact that some standardized practices may exist is insufficient. The question is whether individual issues or class issues predominate.

■ Based upon a review of the evidence submitted in support of Countrywide's briefs opposing class certification, the court finds that Countrywide's closing forms differ somewhat from state to state which apparently is because of the states' different systems of regulating the mortgage loan industry. Furthermore, the broker's role varies in each transaction based upon the borrower's different priorities. Indeed, the precise loan program selected, and the activities necessary to complete a loan transaction depend upon factors which vary widely among borrowers and include, time pressure to close, the amount of financing desired, the amount of out-of-pocket expenses a borrower is willing to pay or finance through the loan itself, and his or her own creditworthiness. Furthermore, the identity and amount of closing costs differ from state to state and city to city and even differ within the same brokerage. Fees, total compensation, and services vary according to the complexity of the loan and the demands of the borrower.

■ In response, the plaintiff argues that such a separate inquiry into each of the 77,056 transactions is unnecessary because the premium paid to the broker by Countrywide is illegal per se where no service is described in detail on the closing document. RESPA, however, does not require, as the plaintiff claims, the detailed description for the service rendered to be identified on the closing document. *See* 24 C.F.R. pt. 3500, App. A. Moreover, several courts have held that the premiums paid by a mortgage lender to a mortgage broker are not illegal per se. *See Moniz v. Crossland Mortgage Corp.,* 175 F.R.D. 1 (D.Mass.1997)("Pursuant to RESPA, the mortgage broker is entitled to earn his compensation through the lender, not just the borrower."); *Badio v. Accubanc Mortgage Company,* C.A. No. 96–12259–RCL (D.Mass. July 2, 1997) and *Barbosa v. Target*

*Mortgage Corp.*, 968 F.Supp. 1548 (S.D.Fla. 1997). Thus, the court is wholly unpersuaded by plaintiff's argument.

Instead, the court is persuaded that to investigate Countrywide and its brokers' liability to the some 77,056 proposed plaintiffs, the trier of fact would need to investigate the services actually performed and fees charged in each specific instance. Whether such fees were reasonable in each instance would require a comparison of the services performed by the broker for each individual with the amount of the fees charged in each instance. Such individual inquiries predominate over questions common to the class as a whole and make the certification of a 23(b)(3) class in this instance inappropriate. *See Sicinski v. Reliance Funding Corp.*, 82 F.R.D. 730 (S.D.N.Y.1979)(where the court denied class certification in a similar instance finding common questions would not predominate because "[f]or each individual transaction, the Court would have to ascertain what services [the attorney] rendered and decide whether [the title insurer's] payment was reasonably related to those services.") Because the court finds that the plaintiff has failed to prove the predominance prong, the court need not examine the other factors applicable to the certification of a 23(b)(3) RESPA class.[3]

## II. THE FRAUD STATEWIDE CLASS

■ In order for the plaintiff to prevail on his fraud claim, he must be able to prove that the defendants made a representation of material fact willfully to deceive, recklessly, without knowledge, or mistakenly; that Briggs justifiably relied on the misrepresentation; and that he was injured as a result of his reliance. *Foremost Insurance Co. v. Parham*, 693 So.2d 409, 422 (Ala.1997). The plaintiff claims that Madison Equity misrepresented that the charges were "actual and necessary", when in fact "these fees were fabricated in order to increase profits." The plaintiff seeks to hold Countrywide liable for Madison Equity's alleged fraud on the basis of agency. Specifically, the plaintiff claims that "[d]efendant Countrywide Funding is liable for the misrepresentation of defendant Madison Equity in that it is the principal of Madison Equity and that they reviewed the documents containing the misrepresentations before closing."

Although, the complaint does not state specifically how the misrepresentations were made, the plaintiff claims that the misrepresentations were not oral, but occurred when Madison Equity put the charge on the closing document, the form of which is prescribed by the federal government. Furthermore, although not specifically stated in the complaint, the plaintiff claims that the broker's failure to inform him that the charges indicated on the HUD–1 were not legitimate constitutes suppression.

■ To prove suppression under Alabama law, the plaintiff must show (1) a duty to disclose [4] and (2) detrimental reliance on the part of the plaintiff. *Duck Head Apparel Co., v. Hoots*, 659 So.2d 897, 904 (Ala.1995). Determination of the reliance issue requires examination of issues relevant to each individual in the class. *See Hickox v. Stover*, 551 So.2d 259, 263 (Ala.1989) overruled prospectively by *Foremost Ins. Co. v. Parham*, 693 So.2d 409 (Ala.1997).[5] In *Hickox*, the Ala-

---

**3.** On August 18, 1997, the plaintiffs submitted to the court as additional authority, the memorandum opinion in *Dubose v. First Security Savings Bank*, 974 F.Supp. 1426 (M.D.Ala.1997). Far from supporting the plaintiff's position, the case highlights the need to make a case specific factual inquiry to determine if RESPA is violated.

**4.** Resolution of the duty issue, as with the reliance issue discussed below, requires the court to examine a whole host of individual issues. *See Dominick v. Dixie Nat'l Life Ins. Co.*, 809 F.2d 1559, 1570 (11th Cir.1987)(under Alabama law, "[t]he existence of a duty to disclose depends on the particular facts and circumstances of each case.") Furthermore, because the plaintiff seeks

to hold Countrywide liable on the basis that Madison Equity was its agent, the court would need to inquire as to whether Countrywide knew of or had reason to know of Madison Equity's fiduciary relationship with each plaintiff.

**5.** In *Parham*, 693 So.2d at 421 (Ala.1997) the Alabama Supreme Court returned the reliance standard from justifiable to reasonable, as it had been prior to July 28, 1989. However, the Court made this change prospective from the date of the decision, March 14, 1997. The plaintiff in the instant action entered into the mortgage loan transaction during the period that justifiable reliance was the standard. Furthermore, the instant action was filed prior to March 14, 1997. Thus

bama Supreme court defined the reliance standard as follows:

> [a] plaintiff, *given the particular facts of his knowledge, understanding and present ability to fully comprehend the nature of the subject transaction and its ramifications,* has not justifiably relied on the defendant's representation if that representation is 'one so patently false that he must have closed his eyes to avoid discovery of the truth.'

*Id.* quoting *Southern States Ford, Inc. v. Proctor,* 541 So.2d 1081, 1091–92 (Ala.1989) (emphasis added). Thus, as a matter of law the court must examine the plaintiff's background and experience in the purchasing and financing of a home, as well as the circumstances under which the alleged fraud arose. These inquiries are fact specific.

Based in large part upon the individual inquiries which accompany the reliance standard under Alabama law, in *Mack v. General Motors Acceptance Corporation,* 169 F.R.D. 671, 678 (M.D.Ala.1996), this court declined to certify a nationwide class of individual car loan borrowers alleging fraud and other theories of recovery.[6] The court held that

> [i]t is clear to the court that resolution of the reliance issue will require the court to examine the background of each individual class member and the conversations between each class member and the automobile dealer and his/her agents. There is no way to resolve the reliance issue on a class-wide basis.

*Id.* at 678. Indeed, other courts have refused to certify a class where fraud is alleged. *See Andrews v. American Telephone & Telegraph Co.,* 95 F.3d 1014, 1023–1024 (11th Cir.1996)(mail and wire fraud allegations are not subject to class-wide resolution); *Castano v. American Tobacco Corp.,* 84 F.3d 734, 745 (5th Cir.1996)("a fraud class

cannot be certified when individual reliance will be an issue.") Thus, to resolve the reliance question in this action, the court would need to examine each class member's background and experience in purchasing and financing a home. There is no doubt that the class members' education levels and practical experiences would differ widely. These widely variant levels of knowledge and experience greatly affect the reliance determination and make individual issues predominate.

To counter the reliance problem, the plaintiff claims that the misrepresentations were not oral, but arose from the simple use of the HUD–1 form. In other words, the plaintiff claims that the misrepresentations are inherent with the use of the closing documents where the fees are recorded. The defendants have established for the court that, even within in the state of Alabama, the fees charged differ from transaction to transaction based upon the services performed by the broker. Thus, even if the documents used by Madison Equity within the state of Alabama are essentially standard, the fees charged are not. Before the court could determine the issue of justifiable reliance in this instance, the court would need to examine each plaintiff's understanding about the documents and determine whether each plaintiff understood the broker to represent that the charges were actual and necessary by the simple use of the document. It stretches the bounds of reason to believe that in every loan transaction no verbal explanations of the fees were given by any agents of Madison Equity.[7] Thus, the court would need to look at the circumstances surrounding each loan transaction to see what questions, if any, the individual plaintiffs asked concerning the charges and the responses given by the individual brokers or other agents of Madison Equity.

---

the standard applicable to this case is justifiable reliance.

**6.** The court recognizes that *Mack* involved a motion to certify a nationwide fraud class and that part of the court's reason for denying certification hinged upon the complexity of examining the fraud law of each state and the varying reliance standards. Although this problem is not posed in the instant action, the court is persuad-

ed, as was the *Mack* court, that resolution of the individual factual issues pertinent to reliance make this action unsuitable for class action treatment.

**7.** Certainly each of the proposed fraud class plaintiffs dealt with different brokers and agents employed by Madison Equity. This adds another level of individual inquiry to the process.

Here, as in *Mack*, there appears to be no way to "resolve the reliance issue on a class-wide basis ... and the issues relating to the individual claims overwhelm and muddle any class issues which may exist." *Mack*, 169 F.R.D. at 678. The factual problems associated with the plaintiff's proof of the state law fraud claim make the fraud claims "wholly inappropriate for class treatment", *id.*, and make the resolution of the proposed class' fraud claims unmanageable. Thus, the common questions of law and fact relating to the defendants' alleged fraud do not predominate over questions which affect only individual class members, and a class action is not a superior method for adjudicating those claims in this instance.

### CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the plaintiffs' motion for class certification be DENIED.

Done this 10th day of September, 1997.