HOOPER, Chief Justice.
Government Employees Insurance Company (“GEICO”), petitions for a writ of mandamus directing the Circuit Court of Coffee County to vacate an order certifying a certain pending action as a class action. We grant the petition to the extent it relates to the plaintiffs’ fraud- claim, their bad-faith-failure-to-pay claim, and their breach-of-eon-traet claim; but we deny it to the extent it relates to the plaintiffs’ request for a judgment declaring that GEICO has not complied with Alabama’s Uninsured Motorist Statute.
This Court has stated many times that the writ of mandamus is an extraordinary remedy and that it will be issued only upon a showing of “(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.” Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala.1991). See also, Martin v. Loeb & Co., 349 So.2d 9 (Ala.1977); Ex parte Slade, 382 So.2d 1127 (Ala.1980) (overruled on other grounds by Ex parte Creel, 719 So.2d 783 (Ala.1998)); Ex parte Houston County, 435 So.2d 1268 (Ala.1983); Ex parte Johnson, 638 So.2d 772 (Ala.1994). “Mandamus is an extraordinary remedy and-will lie to compel the exercise of discretion, but not to compel its exercise in a particular manner except where there is an abuse of discretion.” State v. Cannon, 369 So.2d 32, 33 (Ala.1979). The facts in this case require that the circuit court modify its class certification by decerti-fying the plaintiffs fraud claim, breach-of-contract claim, and bad-faith claim. Otherwise, we find no abuse of discretion on the part of the trial court in its certification of this class action.

I. The Facts and the Proceedings Before the Trial Court

This mandamus petition relates to an action that was filed by Walter Kenney and his wife, Thelma Kenney, to recover uninsured-motorist benefits and medical-payments benefits under an automobile insurance policy GEICO had issued to Mr. Kenney. Mr. Kenney was injured in an automobile accident that he says was caused by an uninsured motorist. Thelma Kenney claimed a loss of consortium, based on her husband’s injuries.
On November 9,1992, Walter Kenney sued Timothy Allen Roach in the Circuit Court of Coffee County, alleging that Roach had negligently caused the automobile accident. Mr. Kenney joined GEICO as a defendant, seeking from GEICO uninsured-motorist and medical-payments benefits under his GEICO policy.
Before the lawsuit was filed, GEICO had paid Mr. Kenney $2,000; this was the maximum amount of coverage provided under the medical-payments provision. After Mr. Ken-ney had filed his lawsuit, GEICO offered him $38,000 under the uninsured-motorist provision of his policy to settle his claims under the policy. According to GEICO and the wording of the policy, $38,000 was the most Mr. Kenney could be paid, because of the “offset provision” of the uninsured-motorist portion of his policy. GElCO’s manual for its adjusters requires adjusters to reduce benefits payable to an insured under the uninsured-motorist coverage by any amount that has been paid under the medical-payments coverage.
*302 GEICO applies this offset uniformly, even though the Alabama statute governing uninsured-motorist coverage, § 32-7-23, Ala. Code 1975, requires that each automobile liability policy providing such coverage provide a minimum of $20,000 in coverage. Because the Kenneys owned two cars as to which GEICO had provided the minimum $20,000 uninsured-motorist coverage, their coverages were “stacked” to provide them with a total of $40,000 in coverage. See Great Central Ins. Co. v. Edge, 292 Ala. 613, 298 So.2d 607 (1974) (this Court recognized “stacking” of insurance policy benefits), and Ala.Code 1975, § 32-7-23(c).[1]
Mr. Kenney rejected the $38,000 offer and amended the lawsuit, adding counts alleging breach of contract and bad-faith failure to pay. On May 9, 1994, Mr. Kenney again amended the complaint to add a fraud count and to aver that he brought the action on behalf of all GEICO policyholders that had purchased GEICO policies containing an endorsement permitting the offset of medical-payments benefits against uninsured-motorist or underinsured-motorist benefits. The essence of Mr. Kenney’s claims is that GEI-CO’s procedure for paying claims under its uninsured-motorist policies violates Alabama’s Uninsured Motorist Statute. On or about June 18, 1996, Mr. Kenney filed a motion for class certification. Mr. Kenney sought class certification under Rule 23(b)(1), 23(b)(2), and 23(b)(3), seeking injunctive relief that would prohibit GEICO from using the medical-payments coverage to reduce benefits paid to a policyholder under the uninsured/underinsured-motorist provision of the GEICO policy. The injunctive relief sought by Mr. Kenney would also order a rewrite of the language in future GEICO automobile policies to prevent what he alleges is a wrongful offset of benefits.
The trial court heard the motion for class-action certification on October 25, 1996, and on December 16, 1997 it issued an order conditionally certifying the class action, as follows:
“1. Class I — Class I shall be maintained as a Rule 23(b)(1) class action with Walter S. Kenney and Thelma June Ken-ney as the named class representatives on behalf of the following defined class Plaintiffs:
“Each and every individual or entity within the State of Alabama, who has purchased at any time from a period of six years preceding the filing of this action, or who will purchase an automobile liability insurance policy marketed, sold or administered by GEICO Insurance Company, which contains substantially the following provisions in such liability, or uninsured, or underinsured motorist coverage as follows:
“ ‘... the amount payable under this coverage will be reduced by all amounts:
[[Image here]]
“ ‘(b) Paid or payable under the Bodily Injury Coverage or Medical Payments Coverage of this policy....’
This class action is to proceed under all theories advanced by Plaintiffs in their complaint and amended complaint for declaratory and injunctive relief and equitable restitution.
*303 “2. Class II — Class II shall be maintained as a Rule 23(b)(2) class action with Walter S. Kenney and Thelma June Ken-ney as the named class representatives on behalf of the following defined class of Plaintiffs:
“Each and every individual or entity within the State of Alabama, who has an action, or who will purchase an automobile liability insurance policy marketed, sold or administered by GEICO Insurance Company, which contained substantially the provision in such liability, or uninsured, or underinsured motorist coverage as follows:
“ ‘... the amount payable under this coverage will be reduced by all amounts:
[[Image here]]
“ ‘(b) Paid or payable under the Bodily Injury Coverage or Medical Payments Coverage of this policy....’
This class action is to proceed under all theories advanced by Plaintiffs in their complaint and amended complaint for declaratory and injunctive relief and equitable restitution.”
GEICO petitions for a writ of mandamus directing the trial court to vacate the conditional class certification. GEICO argues that the trial court abused its discretion in certifying the classes of plaintiffs in this action because, it says, the court’s analysis did not meet the rigorous-analysis requirement of Rule 23, Ala. R. Civ. P., for certification of a class action. Ex parte American Bankers Life Assurance Co. of Florida, 715 So.2d 186 (Ala.1997).

II. Conditional Class-Certification Review

“We note at the outset that the [trial] court maintains substantial discretion in determining whether to certify a class action, a decision we review only for abuse.” Allison v. Citgo Petroleum Corp., 151 F.3d 402, 408 (5th Cir.1998). This Court is not in the position of deciding the merits of this action today. “The question of class certification is a procedural one distinct from the merits of the action.” Garcia v. Gloor, 618 F.2d 264, 267 (5th Cir.1980), cert. den., 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981).
Based on our analysis of the four elements required for class-action certification in Alabama, we conclude that the trial court did not abuse its discretion in certifying the class action under Rules 23(b)(1) and (b)(2), except as to Mr. Kenney’s claims alleging fraud, bad-faith failure to pay a claim, and breach of contract. Those claims were inappropriate for class action treatment under Rule 23(b)(1) and (b)(2).

III. The Four Prerequisites for Class Certification

We must determine if, in fact, the circuit court performed a rigorous analysis of the four prerequisites for conditionally certifying a class action.
Rule 23(a), Ala. R. Civ. P. provides as follows concerning certification of a class action:
“(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.”

A. Numerosity

The trial court found, and we agree, that the plaintiffs met the numerosity requirement. The plaintiffs presented evidence that there were over 36,000 GEICO policies affected by the provision requiring an offset of medical-payments benefits against uninsured-motorist and underin-sured-motorist benefits. An exact number of potential class members is not necessary for certification of a class action. Approximation of the number of potential class members in consumer actions is generally the rule. 2 H. Newberg and A.' Conte, Newberg on Class Actions § 7.22 (3d ed. 1992).

B. Commonality

Commonality is the second requirement under Rule 23(a) that the class must *304 satisfy. The commonality requirement has been liberally construed, and it “is aimed at determining whether there is a need for combined treatment and a benefit to be derived therefrom.” In re: Asbestos School Litigation 104 F.R.D. 422, 428 (E.D.Pa.1984). The central question in this litigation relates to the payment of uninsured-motorist benefits offset by benefits paid under the medical-payments provision and the question whether the provision of GEICO’s insurance policies calling for that offset complies with § 32-7-23, Ala.Code 1996, the Alabama Uninsured Motorist Statute. The class representatives are GEICO policyholders, and the prospect that GEICO will apply the offset in the future offers a limited context for commonality. The trial court determined that, in regard to the offset provisions, GEICO’s treatment of the class representatives is similar to its treatment of others in the potential class, and it determined that the question whether the offset was permissible under the Uninsured Motorist Statute is a fact question common to all the members of the class. We find no error in this determination that the commonality requirement is met.

C. Typicality

The third requirement is typicality. This requirement focuses on the interests of the class representatives. Mack v. General Motors Acceptance Corp., 169 F.R.D. 671, 675 (M.D.Ala.1996). “As the United States Supreme Court noted in General Tel. Co. v. EEOC, 446 U.S. 318, 330, 100 S.Ct. 1698, 1706, 64 L.Ed.2d 319 (1980), the ‘typicality requirement is said to limit the class claims to those fairly encompassed by the named plaintiffs claims.’ ” Id. Because Mr. Ken-ney’s claims for damages for fraud, bad-faith failure to pay a claim, and breach of contract are not suited for resolution under Rule 23(b)(2), the court erred in certifying a class as to those claims. The fraud, bad-faith, and breach-of-contract claims create significant problems for class certification. See Ticor Title Ins. Co. v. Brown, 511 U.S. 117, 114 S.Ct. 1359, 128 L.Ed.2d 33 (1994); Bogard v. Cook, 586 F.2d 399 (5th Cir.1978); Carter v. Butz, 479 F.2d 1084, 1089 (3d Cir.), cert. denied, 414 U.S. 1094, 94 S.Ct. 727, 38 L.Ed.2d 552 (1973); Geraghty v. United States Parole Commission, 719 F.2d 1199 (3d Cir.1983); Santiago v. City of Philadelphia, 72 F.R.D. 619 (E.D.Pa.1976); Rice v. City of Philadelphia, 66 F.R.D. 17 (E.D.Pa.1974).

1. Fraud

Under Alabama law the critical elements of a fraud action are:
“ ‘(a) [A] false representation [usually] concerning an existing material fact ...;
“ ‘(b) representation which (1) the defendant knew was false when made, or (2) was made recklessly and without regard to its truth or falsity, or (3) was made by telling plaintiff that defendant had knowledge that the representation was true while not having such knowledge, Hockensmith v. Winton, 11 Ala.App. 670, 66 So. 954 (1914);
“ ‘(c) reliance by the plaintiff on the representation and that he was deceived by it, Bynum v. Rucker, 235 Ala. 353, 179 So. 241 (1938);
“ ‘(d) reliance which was justified under the circumstances, Fidelity & Cas. Co. v. J.D. Pittman Tractor Co., 244 Ala. 354, 13 So.2d 669 (1943);
“ ‘(e) damage to the plaintiff proximately resulting from his reliance, Smith v. Smith, 266 Ala. 118, 94 So.2d 863 (1957).’”
Army Aviation Ctr. Fed. Credit Union v. Poston, 460 So.2d 139, 142-43 (Ala.1984), quoting First Virginia Bankshares v. Benson, 559 F.2d 1307, 1313 (5th Cir.1977), rehearing denied, 564 F.2d 416 (5th Cir.1977), cert. denied, 435 U.S. 952, 98 S.Ct. 1580, 55 L.Ed.2d 802 (1978). See also Patel v. Hanna, 525 So.2d 1359 (Ala.1988).
It is questionable whether GEICO made any false representations to Mr. Kenney. The policy language makes it clear that the amount paid under the uninsured-motoris. coverage will be offset by any amount par under the medical-payments provision. Mr. Kenney states in his deposition that he nev ..) completely read his policy, yet he acknowledges that the medical-payments offset provision was in his policy. He also acknowledges in his deposition that he gained his knowledge of the policy provisions through his own limited reading of the policy, not through any oral representations made to *305 him by GEICO. Later in his deposition, Mr. Kenney admits that GEICO did not conceal the offset provision from him. He contends that after consulting with his attorney, he came to believe that the offset provision is unenforceable.
Regardless of whether an alleged representation was made willfully, recklessly, or mistakenly, our eases require, for a fraud action: (1) that the defendant made a false representation; (2) that the false representation concerned a material existing fact; (3) that the plaintiff relied upon that false representation, and (4) that the plaintiff was damaged as a proximate result of the reliance. International Resorts, Inc. v. Lambert, 350 So.2d 391 (Ala.1977). Based on the evidence presented to the trial court, one would have to conclude that GEICO made no false representation in this case. The policy itself explains the limitations of the uninsured/under-insured-motorist coverage. If Mr. Kenney had read his policy thoroughly or had asked GEICO for an explanation of the limitations of the policy, he probably would have understood the offset provisions.
Alabama fraud law is consistent with the general law of fraud in other states in regard to both fraudulent misrepresentation and fraudulent suppression. Alabama case-law emphasizes that in a case alleging fraudulent supression the trial court must examine the facts to determine whether the defendant had a duty to disclose; this element of duty to disclose, applicable in the case alleging supression, is analogous to the element of reliance applicable in the case alleging a misrepresentation. Mack v. General Motors Acceptance Corp., 169 F.R.D. 671, 677 (M.D.Ala.1996). “The impact of this law, however, on the class certification decision, is fatal.” Id. The district court in Mack determined that before it could determine the threshold liability of the defendant, GMAC, to a particular class member, it would have to examine all of the facts and circumstances relating to that individual class member to determine if under Alabama law the defendant had had a duty to disclose. Id. In the ordinary fraud action, there must be proof of reliance. Id. at 678. Resolving the issue of reliance would require the court to examine the representations made by GEICO to each of its policyholders regarding the uninsured-motorist coverage and the medical-payments provision. Id. “There is a seemingly endless permutation of facts which the court will have to examine to determine the validity of each class member’s claim.” Id. It would be overly time-consuming and factually overwhelming to resolve each class member’s reliance or lack thereof. To make this essential fraud analysis in this present case would require the court to examine over 36,000 individual policy claims to determine, in each individual situation, the presence of “reliance” or a “duty to disclose.”

2. Breach of Contract/Badr-Faith Failure to Pay

Mr. Kenney alleges that GEICO breached its contract with him by failing to pay him the full policy limits of $40,000 under the uninsured/underinsured-motorist provision of his policy. However, it is questionable whether any breach of contract or bad-faith-failure-to-pay claim exists in this case, because the policy between GEICO and Mr. Kenney, including the setoff provision, was not breached; Mr. Kenney admits that GEI-CO carefully followed the terms of the policy. GEICO’s faithfulness to the policy and the setoff provision contained in it is the basis for this litigation. The policy stated that GEI-CO would reduce the amount paid under the uninsured-motorist provision by the amount paid under the medical-payments provision. GEICO followed the language of that contract and offered Mr. Kenney $38,000, the maximum amount payable under the policy. Mr. Kenney does not dispute the wording of the contract and does not contend that GEI-CO did not follow that wording. He does dispute the legality of GEICO’s reducing the amount paid under the uninsured/underin-sured-motorist provision by the amount paid under the medical-payments provision. He argues that this policy violates Alabama’s Uninsured Motorist Statute, under which, according to his argument, the minimum amount GEICO should pay in his case is $40,000. Mr. Kenney admits that GEICO did not breach the contract between him and GEICO.
*306 The elements of a bad-faith claim were set out by this Court in National Sec. Fire & Cas. Co. v. Bowen, 417 So.2d 179 (Ala.1982):
“[T]he plaintiff in a ‘bad faith refusal’ case has the burden of proving:
“(a) an insurance contract between the parties and a breach thereof by the defendant;
“(b) an intentional refusal to pay the insured’s claim;
“(e) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
“(d) the insurer’s actual knowledge of the absence of any legitimate or arguable reason;
“(e) if ... intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer’s intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
“In short, plaintiff must go beyond a mere showing of nonpayment and prove a bad faith nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim.”
Id. at 183. See also Employees’ Benefit Association v. Grissett, [Ms. 1961766, September 11, 1998] - So.2d - (Ala.1998), and Chavers v. National Sec. Fire & Cas. Co., 405 So.2d 1 (Ala.1981).
Since recognizing the tort of bad-faith failure to pay an insurance claim, this Court has held that mere negligence or mistake is not sufficient to support a claim of bad faith; there must be a refusal to pay, coupled with a conscious intent to injure. See King v. National Foundation Life Ins. Co., 541 So.2d 502 (Ala.1989); Pierce v. Combined Ins. Co. of America, 531 So.2d 654 (Ala.1988); Coleman v. Gulf Life Ins. Co., 514 So.2d 944 (Ala.1987); Blue Cross & Blue Shield of Alabama v. Granger, 461 So.2d 1320 (Ala.1984); Gulf Atlantic Life Ins. Co. v. Barnes, 405 So.2d 916 (Ala.1981).
GEICO’s decision not to pay the full $40,-000 was based on the clear offset language of the insurance policy. Therefore, at least one of the elements necessary for a bad-faith claim is absent, i.e., the requirement that the insurer have no legitimate or arguable basis for denying the claim.

3. Rule 23(b)(1)

The fraud claim made by Mr. Ken-ney is inappropriate for class treatment under either Rule 23(b)(1) or (b)(2). It is inappropriate under Rule 23(b)(1)(A) because Kenney’s claim is primarily for injunctive relief. “A class suit seeking exclusively or primarily injunctive relief will usually be certified under Rule 23(b)(2), though it might also qualify under subdivision (b)(1)(A). Class suits seeking damages exclusively are prime candidates for Rule 23(b)(3) classes.” 1. H. Newberg and A. Conte, Newberg on Class Actions, § 4.08 (3d ed.1992). This Court has stated:
“ ‘Rule 23(b)(1)(A) class actions involve those classes formed if the prosecution of separate lawsuits would create the risk of inconsistent adjudications. A classic example would be separate lawsuits by individuals against a municipality concerning a bond issue, some individuals wishing to invalidate the issue, others to limit it, and still others to enforce interest payments under the bonds. Larry L. Teply & Ralph U. Whitten, Civil Procedure 689 (1994). If one group succeeded in invalidating the bond issue and another succeeded in getting judgments ordering payment of the interest, the municipality would have incompatible standards with regard to the bond issue. Another example of a situation suggesting a Rule 23(b)(1)(A) class action would be where individual lawsuits concerning the rights and duties of riparian landowners could result in inconsistent rulings. Rule 23, F.R.Civ.P. Advisory Committee Notes. There would be a substantial risk of different results if each owner of land along the river were allowed to bring a separate lawsuit regarding water rights.’ ”
Ex parte Holland, 692 So.2d 811, 815 (Ala.1997) (quoting Adams v. Robertson, 676 So.2d 1265, 1269 (Ala.1995), cert. dismissed, *307 520 U.S. 88, 117 S.ct. 1028, 137 L.Ed.2d 203 (1997)). Therefore, we conclude that Mr. Kenney’s claim is not appropriate for class treatment under Rule 23(b)(1)(A).
It appears that Mr. Kenney’s fraud, bad-faith, and breach-of-contract claims maybe more fit for analysis on an individual basis. The Advisory Committee Notes to Federal Rule 23(b)(1)(B) state that subsection (b)(1)(B) applies to “situations where the judgment in a nonclass action by or against an individual member of the class, while not technically concluding the other members, might do so as a practical matter.”[2] This Court has said that “Rule 23(b)(1)(B) authorizes the maintenance of a mandatory class action only if the prosecution of separate actions by individual members of the class would create a risk of adjudications with respect to individual members of the class that would as a practical matter be disposi-tive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.” Ex parte Holland, supra, 692 So.2d at 816.
It appears from the record before us that Mr. Kenney may not in fact have a fraud or breach-of-contract claim. However, we cannot definitively say that no other class member will have such a claim. If the trial court entered on Mr. Kenney’s breach-of-contract and fraud claims a judgment that applied to all other class members, it is possible that that judgment could work an injustice to the class members that may have experienced cognizably different or more serious instances of fraud. This Court cannot allow the individual action of a class representative to bind the other class members to such an inequitable result.

k. Rule 23(b)(2)

Kenney’s claims of fraud and breach of contract are inappropriate for class treatment under Rule 23(b)(2). His claim for injunctive relief is appropriate for (b)(2) treatment. There may be other class members who had totally different experiences in regard to allegations of fraud and breach of contract. Claims based on those experiences would require analysis on an individual basis. The fraud and breach-of-contract claims are not suitable for treatment under Rule 23(b)(1) or (b)(2). We, therefore, direct the circuit court to vacate its certification of those claims under those sections of Rule 23. That leaves Rule 23(b)(3). , We do not mean to say, however, that these claims would necessarily satisfy the requirements of Rule 23(b)(3). We do not now rule on that question. The trial court is directed to consider whether certification would be proper under Rule 23(b)(3). We recognize that Mr. Ken-ney will have significant hurdles to overcome in order to be entitled to certification of his claims of fraud and breach of contract under Rule 23(b)(3).[3]
*308 5. Distinguishing Adams v. Robertson
In Adams v. Robertson, supra, 676 So.2d 1265, this Court determined that the trial court could certify the plaintiffs claim as a Rule 23(b)(2) class action. It stated that the relief requested on the plaintiffs’ fraud claim was primarily equitable. The fraud claim in that case is distinguishable from the fraud claim in this present case. In Adams v. Robertson, the plaintiff filed an action against an insurance company, complaining that it had persuaded holders of its cancer policies to trade their old policies for new “improved” policies. However, the plaintiff claimed that the benefits of the new policies were actually of less value to the policyholders than the benefits of the old policies. This Court stated:
“We note that simply because equitable relief has a ‘value’ based on money or has ‘worth’ does not make it monetary relief. For example, if a person is ordered to execute a conveyance of land based on a contract, the land has a money ‘value,’ although the relief granted is equitable, i.e., equity acts on the person, by compelling him to fulfill his contract. In this case, the ‘reformed’ policies have an increased ‘value’ to the insureds, but the relief granted was forcing Liberty National to restore the benefits. More importantly, the benefits of a reformed policy are not enforceable unless the insured contracts cancer.”
676 So.2d at 1271. In Adams v. Robertson, the fraud claim was fairly clear in the complaint and it resulted in an equitable result, the reformation of the insurance contract. However, in this present case, it is not at all clear what kind of fraud GEICO may have engaged in, if it did engage in a fraud, because it did not persuade its policyholders to switch to a new policy, as Liberty National was alleged to have done in Adams v. Robertson. The contested provision in GEICO’s policy, to which Mr. Kenney, the representative of the plaintiff class, apparently agreed, has remained unchanged since the time Mr. Kenney originally agreed to purchase a policy from GEICO.
However, the central question that controls this case is whether GEICO’s reduction in payment of benefits is lawful under the Uninsured Motorist Statute. The typicality requirement for this claim is satisfied by a common question — whether the setoff *309 provision of GEICO’s contract with its policyholders violates Alabama law. That question is present in more than 36,000 policies. However, we cannot agree that Mr. Kenney’s fraud and breach-of-contract claims are typical of claims held by the entire class. The typicality requirement of Rule 23 is satisfied as to one question, but that typicality does not include the fraud and breach-of-contract claims under Rule 23(b)(1) or (b)(2).

D. Adequacy of Representation

The trial court rigorously analyzed the fourth element, adequacy of representation, but not as it relates to the fraud, bad faith, and breach-of-contract claims. In the case of fraud, the third element, typicality, bears on the fourth element, adequacy of representation. It is questionable whether Mr. Kenney can adequately represent a class of people on a fraud claim when it appears he freely admits that he was not the victim of fraud. The trial court would have to review, on a case-by-case basis, the other class members’ fraud claims. Therefore, he could not adequately represent those class members.
However, we hold that the trial court did not abuse its discretion as to the fourth requirement for class certification, as that requirement relates to the request for a judgment declaring that the offset provision violates Alabama law. Under the adequacy-of-representation requirement, the representative plaintiffs must fairly and adequately protect the interests of the class. Rule 23(a)(4), Ala.R.Civ.P. The adequacy-of-representation inquiry involves questions as to whether the plaintiffs counsel are qualified, experienced, and generally able to conduct the proposed litigation, and as to whether the plaintiffs have interests antagonistic to those of the rest of the class. Griffin v. Carlin, 755 F.2d 1516 (11th Cir.1985). Mr. Kenney’s counsel are qualified to represent the class in this matter. Mr. Kenney does not appear to have any interests antagonistic to the interests of the other class members. No evidence has been presented that would suggest that Mr. Kenney could not adequately represent the class members in a proceeding to determine whether GEICO’s setoff policy violates Alabama’s Uninsured Motorist Statute. We hold that certification of this action as a class action under Rule 23(b)(1) or (b)(2) was, as to the plaintiffs’ breach-of-contract and fraud claims, inappropriate. We hold that the adequacy-of-representation requirement has been satisfied as it relates to the question whether GEICO’s setoff policy violates Alabama’s Uninsured Motorist Statute.

IV. Conclusion

We grant the petition for the writ of mandamus in part; we direct the circuit court to vacate its class certification, under Rule 23(b)(1) and (b)(2), as it relates to the fraud, bad-faith, and breach-of-contract claims. We direct the circuit court to consider whether certification of those claims would be proper under Rule 23(b)(3). We deny the petition insofar as it seeks an order requiring the circuit court to vacate its Rule 23(b)(2) class-certification order as it relates to the request for a judgment declaring GEICO’s setoff policy violates Alabama’s Uninsured Motorist Statute.
PETITION GRANTED IN PART; DENIED IN PART.
MADDOX, SHORES, HOUSTON, and SEE, JJ., concur.
COOK and LYONS, JJ., concur in the result.

. To “stack” insurance-policy benefits means to allow the policyholder to add together the benefits available for some or all of the cars insured under the policyholder’s automobile insurance policy. Take, for example, the policyholder that is involved in an accident with an uninsured motorist and has three cars insured with a particular insurance company. If that policyholder insures those cars with uninsured-motorist coverage for $20,000 per car, and then that policyholder is injured by the act of an uninsured motorist and the recoverable damages amount to more than $20,000, the policyholder, in a claim against his insurer, may add together the coverages for more than one car, even if only one of the cars insured is involved in the accident. If the policyholder is entitled to $55,000 in damages, then he may file a claim with the insurer for that amount, even though the car involved in the accident was insured for only $20,000. If the recoverable damages total more than $60,000, the policyholder may file a claim for no more than $60,000, because that is the total coverage for all three insured cars.
The Edge case summarized the concept as follows:
"This [C]ourt holds that under the facts of this case where the insurer issued a policy providing uninsured motorist coverage and collected a premium with respect to more than one automobile the insurer can not preclude a recovery based on each premium by a limiting clause.”
Edge, 292 Ala. at 615, 298 So.2d at 608.

. Rules Advisory Committee Notes to 1966 Amendments to Rule 23, 39 F.R.D. 69, 100-01 (1966).

. For example, Rule 23(b)(3) requires that “the court find[] that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.” Rule 23(b)(3), Ala.R.Civ.P. This Court stated in Ex parte Green Tree Financial Corp., 723 So.2d 6 (Ala.1998):
"In determining whether the questions of law or fact common to the class members predominate over those questions that affect only individual class members, the court must initially identify the substantive law applicable to the case and identify the proof that will be necessary to establish the claim. Alabama v. Blue Bird Body Co., 573 F.2d 309, 316 (5th Cir.1978). This consideration is particularly important in cases where one or more of the claims will require proof of subjective factors.... Moreover, the greater the number of individual issues, the less likely it is that a court may properly find that a class action is the superior means of litigating the plaintiff's claims. In re American Medical Sys., 75 F.3d 1069 (6th Cir.1996)."
As prior federal caselaw has demonstrated, a fraud claim is wholly inappropriate for class treatment and should be handled in a separate proceeding. "The common questions of law and fact relating to ... the alleged fraud do not predominate over questions affecting only individual class members and a class action is not a superior method for adjudicating those claims.” Mack v. General Motors Acceptance Corp., 169 F.R.D. 671 (M.D.Ala.1996). See also Andrews v. American Telephone & Telegraph Corp.[Co.], 95 F.3d 1014 at 1023 (11th Cir.1996), and Castano v. American Tobacco Co., 84 F.3d 734 at 745 (5th Cir.1996).
This Court has stated:
"When considering whether the facts and circumstances of a potential class action satisfy *308 the 'predominance' and 'superiority’ criteria of subsection (b)(3), the trial court 'must go beyond the skeleton of 23(a) [requirements of numerosity, commonality, typicality, and adequacy of representation], in order to be certain of the existence of a group which is more bound together by a mutual interest in the settlement of common questions than it is divided by the individual members’ interest in matters peculiar to them.’ 3B James Wm. Moore et al., Moore's Federal Practice 23.45[2] p. 23-299 (2d ed. 1985). Thus, while deciding the certification question may not require a court to look behind the pleadings in every case, a trial court may need to do so in order to examine the nature of the claims and defenses, the relevant facts, and the substantive law, in order to make a meaningful determination of the certification issues. See Ex parte Equity Nat’l Life Ins. Co., 715 So.2d 192 (Ala.1997); Castano v. American Tobacco Co., 84 F.3d 734, 744 (5th Cir.1996)."
Ex parte AmSouth Bancorporation, 717 So.2d 357, 362-63 (Ala.1998), (three Justices concurring and five Justices concurring in the result).
This Court also wrote in AmSouth:
"It is well established in the federal courts that, although a fraud committed upon numerous persons may have some common core, it may be nonetheless unsuitable for class treatment under Rule 23(b)(3) where there were material variations in the representations allegedly relied upon by the potential class members. See Advisory Committee's Note to Rule 23(b)(3), Fed.R.Civ.P., 39 F.R.D. 98, 103 (1966); Darms v. McCulloch Oil Corp., 720 F.2d 490 (8th cir. 1983); Clark v. Watchie, 513 F.2d 994 (9th Cir.), cert. den., 423 U.S. 841, 96 S.Ct. 72, 46 L.Ed.2d 60 (1975); Simon v. Merrill Lynch, Pierce, Fenner & Smith, 482 F.2d 880 (5th Cir.1973). Accord Butler v. Audio/Video Affiliates, Inc., 611 So.2d 330, 332 (Ala.1992) (holding that it was not an abuse of discretion to deny certification of a consumer-fraud class action under Rule 23(b)(3) where the trial court reasonably found, among other things, that 'any representations made to alleged members of the ... class were oral and varied from person to person’). Indeed, ‘the key concept in determining the propriety of class action treatment [as to fraud claims] is the existence or nonexistence of material variations in the alleged misrepresentations.’ Grainger v. State Sec. Life Ins. Co., 547 F.2d 303, 307 (5th Cir.1977).”
We see numerous problems with class treatment under Rule 23(b)(3), but that question is not presently before us. Therefore, we leave that determination to the trial court.