These appeals are from a class-certification order, filed pursuant to Act No. 99-250, Ala. Acts 1999, codified at §§ 6-5-640
through -642, Ala. Code 1975 (Cum. Supp. 1999). The Act requires a trial court to hold a "full evidentiary hearing" on class certification under Rule 23, Ala.R.Civ.P. This Court has consistently held that a trial court's class-certification order is to be reviewed by an abuse-of-discretion standard. Ex parteGovernment Employees *Page 1177 Ins. Co., 729 So.2d 299, 303 (Ala. 1999). We find no abuse of discretion in the court's entering the class-certification order; therefore, we affirm.
The trial judge held a full evidentiary hearing, which met the requirements of §§ 6-5-640 through -642. The trial judge made the following findings of fact:
 "For the purpose of certification, the court should not conduct a mini trial on the merits of the litigation. Consequently, the court finds the following facts only to the extent that they aid the Court in deciding the issues of certification.
 "Skin Cap was a product manufactured by Defendant Cheminova International, S.A., a corporation head-quartered in Madrid, Spain. Defendant Cheminova America is a corporation with its principal place of business in South Florida, which served as the American distributor of Skin Cap.
 "Skin Cap was an over-the-counter medication which purportedly contained the ingredient zinc pyrithione. While the label of the product did not contain any reference to psoriasis, beginning in 1996 there was widespread discussion about the use of the product as a psoriasis treatment.
 "In early 1997, Defendant Acuderm, Inc. began promoting and distributing Skin Cap for Cheminova America. On March 6, 1997, Acuderm and Cheminova America entered into a letter agreement whereby Acuderm became a non-exclusive medical distributor of Skin Cap. While Acuderm did not promote Skin Cap as a psoriasis treatment, it was clear that it intended to and did market the product for use as a psoriasis treatment. Prior to entering into a letter agreement with Cheminova, Acuderm was aware of concerns and rumors that Skin Cap contained a steroid, and specifically obtained assurances from the manufacturer, Cheminova, that this product was safe and contained no steroids. Acuderm purchased and sold approximately 22,000 units of Skin Cap pursuant to its agreement with Cheminova America.
 "Even before Acuderm began selling Skin Cap, rumors persisted that Skin Cap contained steroids. However, acuderm's literature specifically stated that the product was steroid free.
 "On August 13, 1997 Acuderm received from the Federal Food and Drug Administration (`FDA') a warning statement dated August 8, 1997, stating that Skin Cap contained a potent corticosteroid and should not be used without a physician's supervision. On September 11, 1997, Acuderm agreed to recall all its Skin Cap products. Pursuant to that recall, Acuderm agreed to reimburse physicians and patients for any unused Skin Cap products. However, shortly thereafter, Acuderm soon refused to reimburse its customers for their Skin Cap purchases.
 "The FDA tested several samples of the Skin Cap product, and on each occasion found high levels of super potent corticosteroids in the product.
 "Acuderm sold the product directly to users, and also sold it to pharmacies such as Nixon Drugs. Acuderm maintains, and has produced in discovery, invoices and billing information providing the name, address and purchase price of products sold to each of its direct customers.
 "Plaintiff Iris Corker was first told of Skin Cap by her dermatologist, Dr. Charles Behlen, around June, 1997. Ms. Corker purchased the Skin Cap product, in her case a spray can, from Nixon Drugs on numerous occasions from June until October, 1997. The Skin Cap had a retail cost of approximately $44 per can. The label on the can described its ingredients, but made no mention of any steroids. Ms. Corker, unaware of any controversy about the ingredients of Skin Cap, purchased the product after the Defendants already knew about persistent rumors that Skin Cap contained *Page 1178 
corticosteroids — and in fact even after the recall order was issued by Acuderm.
 "None of the Defendants ever informed Ms. Corker that the product was dangerous. Ms. Corker received no information from any other source that the product was dangerous even though Acuderm's recall was under way. It was not until December, 1997 that Ms. Corker visited another dermatologist, Dr. Neal Capper, who first explained to her that the product had been marketed illegally. Dr. Capper informed Ms. Corker that some of the problems she was having with her skin were the result of her use of Skin Cap. After discontinuing the use of Skin Cap, Ms. Corkers's psoriasis actually became worse than before the use of the product. This `rebound' effect of the psoriasis is a known anticipated side effect of using corticosteroids in the treatment of psoriasis.
 "Plaintiff Tommy Bell, who purchased directly from Acuderm, had an identical experience."
On February 20, 1998, Iris Corker, acting individually and on behalf of a national class of similarly situated individuals, filed a complaint in Mobile County against Laboratories Cheminova Internacional, S.A.,[1] Cheminova America Corporation, Acuderm, Inc., and Nixon Drugs, Inc. Her complaint asserted fraud claims and a claim under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"). As last amended, the complaint contained five counts. Counts One and Two stated claims alleging fraud and suppression arising from the alleged mislabeling of the contents of the product. Count Three stated a claim alleging breach of warranty; Count Four stated a claim for restitution of the purchase price paid by the plaintiffs; and Count Five stated a breach-of-contract claim.
On February 2, 1999, Ms. Corker filed a motion seeking certification of the following class:
 "persons who purchased and used a product named `Skin Cap' distributed by Cheminova America Corp., either directly or indirectly through Acuderm, Inc."
Ms. Corker filed a third amended complaint on March 31, 1999, in which she added Tommy Bell as an additional class representative. The amended complaint asserted that Acuderm had sold Skin Cap directly to Bell and, therefore, that Acuderm was liable for the purchase price of the product. In April 1999, Cheminova filed a motion to continue the class-certification hearing that was set for April 28.
The trial court orally denied the continuance, at a hearing held on April 23, 1999. A full hearing on Ms. Corker's motion for class certification was held on April 28, 1999, at which the plaintiffs offered 21 documents in support of their argument. Acuderm filed a motion to strike the affidavit of the plaintiff Tommy Bell, but the court never ruled on this motion.
On August 3, 1999, the trial court entered an order certifying the action under Rule 23(b)(3), Ala.R.Civ.P., as a nationwide class action for the recovery of economic damages. The trial judge rejected class treatment of the fraud and suppression claims and rejected class treatment of claims for personal-injury damages under any theory, and it wrote:
 "However, Plaintiff's product liability [claim], alleged under Alabama's . . . AEMLD, and the fraud [claim, are] not sufficiently common for class treatment. Variations in state law will overcome commonality as to those theories and will prevent certification.
 "Furthermore, Plaintiffs' claims for personal injuries, as opposed to those seeking refund of the purchase price involve issues of damages which overcome the predominance of the fact of injury."
The trial judge limited the certification to claims for refunds sought by members of the class: *Page 1179 
 "As to Plaintiffs' refund claims under contract, equity and the Uniform Commercial Code, a national class is certified, with the subclasses composed of purchasers purchasing directly from Acuderm and another composed of purchasers purchasing directly from a subdistributor of Acuderm. Plaintiff's motion to certify a national products liability and fraud class is denied, as well as Plaintiffs' motion to certify a personal injury class."
Thus, the trial judge certified a class whose claim is that class members are entitled to get their purchase money back because the defendants mislabeled, in a critical way, the product they sold to the class members.
On September 13, 1999, Cheminova and Acuderm appealed from the certification order.
 Rule 23(a) Requirements
We must determine whether the trial judge abused his discretion in performing his analysis of the four prerequisites for conditionally certifying a class action under Rule 23(a), Ala.R.Civ.P.:
 "(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."
These four prerequisites are commonly referred to as numerosity, commonality, typicality, and adequacy. Warehouse Home FurnishingDistribs., Inc. v. Whitson, 709 So.2d 1144, 1148 (Ala. 1997).
The record indicates that the trial judge, in deciding to conditionally certify a limited class, made the "rigorous analysis" required by this Court's caselaw. See Ex parte CiticorpAcceptance Co., 715 So.2d 199 (Ala. 1997), and Ex parte ExxonCorp., 725 So.2d 930, 932 (Ala. 1998). We will discuss the four prerequisites.
 Numerosity
The first requirement for a class-action certification is numerosity. The trial judge's certification order states:
 "The initial prerequisite to a class action under Ala.R.Civ.P. 23(a) is that the class be `so numerous that joinder of all members is impracticable.' For purposes of Rule 23(a)(1), impracticability is not equated in impossibility, but relates to the difficulty or inconvenience in joining all class members. See Gomez v. Illinois State Board of Education, 117 F.R.D. 394, 398-99 (N.D.Ill. 1987). The numerosity requirement imposes no absolute minimum number, but is subject to examination of the specific facts of each case. See General Tel. Company of the Northwest, Inc. v. EEOC, 446 U.S. 318 (1980); Sagers v. Yellow Freight Systems, Inc., 529 F.2d 721 (5th Cir. 1976); Afro American Patrolmen League v. Duck, 503 F.2d 294 (6th Cir. 1974); Snider v. Upjohn Co., 115 F.R.D. 536, 539 (E.D.Pa. 1987).
 "The court can accept commonsense assumptions in order to support a finding of numerosity, and estimates of the class size suffice for the purpose of this rule. [Citations omitted.] It is clear that the size of the Class in the instant case is in the thousands. Defendants do not actively contest the numerosity requirements."
"Approximation of the number of potential class members in consumer actions is generally the rule." Ex parte GovernmentEmployees Ins. Co., supra, at 303, citing 2 H. Newberg and A. Conte, Newburg on Class Actions § 7.22 (3d ed. 1992). We conclude that the trial court did not abuse its discretion in holding that the plaintiffs meet the numerosity requirement. *Page 1180 
 Commonality
Commonality is the second requirement under Rule 23(a) that the class must satisfy. The trial court stated in its certification order:
 "Rule 23(a)(2)'s commonality requirement is satisfied where there are common questions of law or fact. See Ala.R.Civ.P. 23(a)(2). This provision does not require that all questions of law or fact be common. [Citations omitted.] For example, factual variations among the class's grievances will not defeat a class action. A common nucleus of operative facts is usually enough to satisfy the commonality requirement of Rule 23(a)(2). This is true regardless of whether the underlying facts fluctuate over the class period. [Citations omitted.]
 "This case presents numerous common questions both of law and fact. The most important fact common to all plaintiffs is whether the product sold contained steroids. While each class member's use of the product will vary, the fact that an undisclosed substance was contained in the product will predominate over all other issues. The thrust of the case is that the Defendants knowingly or unknowingly sold a dangerous product as a safe over-the-counter medication. While there were undoubtedly specific variations in the use of the product to each class member, the case primarily turns on that one fact. As to Plaintiffs' contract, equity and warranty claims the common issue clearly predominates."
We find no abuse of discretion on the part of the trial court here. The court properly identified the central question in this litigation as relating to the factual issues whether the product sold contained an undisclosed substance and whether the defendants knowingly or unknowingly sold a dangerous product. The principles of the Uniform Commercial Code ("U.C.C.") can be easily applied on a classwide basis. Under U.C.C. Article 2, some version of which has been adopted in all states except Louisiana, a description of a product on a label creates an express warranty. See, e.g., §7-2-313, Ala. Code 1975. The label on the Skin Cap product contains a "core description" of what the defendants were selling; that description is an "express warranty" under the plain terms of § 7-2-313. A sale of a product that is not fit for use as described violates the implied warranty of merchantability — that the product is fit for its intended purpose — an implied warranty that under the U.C.C. accompanies each sale by a merchant. §7-2-314, Ala. Code 1975.
The defendants contend that the variations in the degree of privity the separate class members had with the defendants, variations caused by the application of the laws of the several states, are so great that this action may not proceed as a class action. However, we believe any problems caused by those variations would be manageable. Those who are in the direct-purchaser subclass are in privity with Acuderm. Second, the state-law variations can be recognized and dealt with by the trial court, because the facts of the transactions are uniform and are not in dispute insofar as they relate to privity. The questions of fact and law common to the class predominate over any questions affecting only individual members of the class.
 Typicality
The third requirement of Rule 23(a) is typicality. That requirement focuses on the interests of the class representatives. The trial court stated in its certification order:
 "The third requirement of Rule 23(a) is that the `claims of the named plaintiffs have the same essential characteristics as the class at large.' See Coleman v. Cannon Oil Co., 141 F.R.D. 516, 527 (M.D.Ala. 1992); Anderson v. Bank of the South, 118 F.R.D. 136, 146
(M.D.Fla. 1987). `A representative's claim is typical [if it] arises from the same event or practice or course of conduct that gives *Page 1181 
rise to the claims of other class members and . . . [is] based on the same legal theory.' [Citations omitted.] For the reasons set out above, Plaintiffs have satisfied this requirement.
 "Where, as here, `the party seeking certification alleges that the same unlawful conduct was directed at the class representatives and the class itself, the typicality requirement is usually met irrespective of the varying fact patterns which underlie individual claims.' See Appleyard v. Wallace, 754 F.2d 955, 958 (11th Cir. 1985). In this case the varying fact patterns that underlie Plaintiffs' claims do not change the result. The specific differences highlighted by the Defendants are distinctions without a difference."
We find no abuse of discretion on the part of the trial court in regard to the requirement of typicality.
 Adequacy of Representation
The fourth requirement for class certification is adequacy of representation. The trial court rigorously analyzed this fourth element in its certification order, as follows:
 "The final requirement of Rule 23(a) is that the named Plaintiffs `will fairly and adequately protect the interests of the class.' The test for adequacy of representation has two aspects: (1) whether the named Plaintiffs have interests antagonistic to those of the rest of the class; and (2) whether Plaintiffs' counsel are qualified, experienced and generally able to conduct the proposed litigation. See Kirkpatrick v. J.C. Bradford Co., 827 F.2d 718, 726 (11th Cir. 1987). The burden is on the Defendant to show inadequacy of representation. [Citations omitted.]
 "Adequacy of both the plaintiff and counsel is clearly met here as counsel for plaintiff are knowledgeable and possess extensive experience in complex litigation, and plaintiff has no interest adverse to the class."
We find no abuse of discretion in regard to the fourth requirement.
 Rule 23(b) Requirements
Next, we consider whether the trial court erred in finding that the plaintiffs have met the elements of Rule 23(b)(3) for class certification. The trial court stated in its certification order:
 "Plaintiff seeks class certification pursuant to Rule 23(b)(3), which is appropriate if the Court finds that (1) common questions of fact or law predominate over individual questions, and (2) class treatment of Plaintiff's claims is superior to other available methods for the fair and efficient adjudication of the controversy. For the reasons stated below, the Court finds that both the predominance and superiority requirements are met in this case as to the claims for refunds of the purchase price.
 "To predominate, common issues must constitute a significant part of individual class members' cases. [Citations omitted.] Where, as here, a common course of conduct has been alleged arising out of a common nucleus of operative facts, common questions predominate. Jury findings on common questions of fact and Court rulings on common issues of law will significantly advance the resolution of identical or substantially similar questions and issues which would require resolution in connection with individual claims.
 "As stated above, in this case, the actions of the defendants in selling the falsely labeled product, if true, are all common to the Class members and represent a common thread allegedly resulting in injury to the Class.
 "In testing predominance, pursuant to Rule 23(b)(3), as well as testing superiority, the trial court should consider: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced *Page 1182 
by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forums; (D) the difficulties likely to be encountered in the management of a class action. Each of these factors strongly weighs towards class certification.
 "There is very little interest in the members of the class individually controlling the prosecution of separate actions because of the size of the relative damage claims to be asserted. Further, should any member of the class desire to control the prosecution of their own lawsuit, they may opt out of this class. The court is not aware of any other litigation pending by or against members of the class which would resolve the issues involved in this litigation. It is certainly desirable, in the interest of judicial economy, to concentrate this litigation in an individual forum. This Court's determination as to the ingredients of the said products, and the effect of the ingredients on individuals can best be decided in a single forum. There should not be any insurmountable difficulty encountered in the management of this class action. The central issues involved will be the conduct of the Defendants, uniformly applied across the class. While there will be issues which will arise which may require subclasses, and separate treatment for certain segments of the class action, by far the common issues predominate over any of these individual issues.
 "In Ex parte Green Tree Financial Corp., 723 So.2d 6
(Ala. 1998), the Court stated that in determining whether questions of law and fact are common to the class and whether these common elements predominate over individual issues, the Court should identify the substantive law applicable to the case and the proof required to establish the claim. In this case the law will be supplied by the Uniform Commercial Code and basic contract and equity principles. The variations of state laws, of any, will not overcome the common nature of this action.
 "The one variant in state law which does exist is the variations on privity requirements. By creating two subclasses, the differences will be more manageable. By limiting the recovery to a refund class, the variations in state law, if any, may be easily handled in any formal recovery.
 "Defendants' arguments that there are other variations in state law is not persuasive. The differences that exist do not alter the basic facts relating to liability, if any. Individual damages issues also do not destroy predominance, since the claims based on the amount paid for the product may be confirmed by a special master, or some other device which will lessen the burden on the court.
 "Rule 23(b)(3) directs the Court to determine that a `class action is superior to other available methods for [the] fair and efficient adjudication of the [controversy].' Ala.R.Civ.P. 23(b)(3). In determining whether the class action device is superior here, I have considered what other procedures, if any, exist for disposing of the dispute. The most obvious, and perhaps only, alternative to a class action is to remit the Class members to the institution of individual actions. [Class treatment] of this action is far more favorable than the individual adjudication of even a small fraction of the Class members' claims. In the absence of class certification, it is probable that many claims would not be pursued because litigation costs would be prohibitive, and because many Class members may never know of their potential claims. The use of the class device in this action will serve the goals of economies of time, effort and expense by preventing the same issues from being litigated and adjudicated in multiple courts.
 "A class action is the superior method of adjudicating this controversy for, *Page 1183 
among other reasons, those contemplated by [Rule 23(b)(3)(A)-(D)]: (1) any interest of Class members in individually controlling the prosecution of separate actions is outweighed by the potential for the comprehensive and expedient resolution of this class action; (2) the number and type of individual lawsuits commenced by members of the Class would not result in relief to the overwhelming majority of the Class members; (3) it is desirable to concentrate the litigation in a single forum, to prevent repetitive pretrial discovery, trial preparation and trial, and to avoid inconsistent adjudications; and (4) no insurmountable difficulties are likely to be encountered in the management of this action. I find each of the above elements to be present here and grant the motion in part as set forth below."
We cannot say the court abused its discretion in finding the plaintiffs had satisfied the Rule 23(b) requirements for class certification.
 The Defendant's Other Arguments
The defendants claim the trial court abused its discretion in certifying the action as a class action because, they say, the plaintiffs failed to "prove" facts necessary to find liability. However, at this stage of the proceedings, the kind and level of proof are distinctly different from those required at a trial on the merits. A plaintiff seeking to represent a class need not prove its entire case in order to satisfy the requirements of Rule 23, Ala.R.Civ.P. Ex parte Government Employees Ins. Co., 729 So.2d at 303; Ex parte AmSouth Bancorporation, 717 So.2d 357,366 (Ala. 1999).
The defendants also claim that the trial court abused its discretion in denying Cheminova America's motion for a continuance of the class-action hearing. We review a trial court's denial of a motion for a continuance by asking whether the denial was a palpable abuse of the court's discretion. Copeland v. SamfordUniv., 686 So.2d 190 (Ala. 1996). The defendants have not shown that the trial court abused its discretion.
Finally, the defendants claim that the plaintiffs' claims are preempted by Alabama's Deceptive Trade Practices Act, Ala. Code 1975, §§ 8-19-1 to -15, specifically § 8-19-10(f). They cite Exparte Exxon Corp., supra, 725 So.2d 930. Ex parte Exxon
decertified a class action, because of the preemption provision of § 8-19-10(f). 725 So.2d at 933-34. The plaintiffs in Ex parteExxon sought relief specifically based on New Jersey consumer-protection laws and sought to apply, on a nationwide basis, the New Jersey statutory remedy to the defendants' course of conduct. Because Alabama law prevents consumers from representing a class seeking relief for a defendant's alleged deceptive trade practices, § 8-19-10(f), Ala. Code 1975, this Court held that the class representatives in that case could not maintain the action as a class action. The defendants argue that this Court's decision in Ex parte Exxon supports their claim that the plaintiffs here are preempted from filing a class action. We disagree.
The legislative intent behind Alabama's Deceptive Trade Practices Act was to require "a strong and effective consumer protection program to protect the interest of both the consuming public and the legitimate businessperson." § 8-19-2. Section8-19-15 is a "saving clause"; it provides that the Act is cumulative and that a plaintiff can elect whether to sue for the remedies provided under the Act or to sue for remedies allowed by the common law. § 8-19-15(b). While § 8-19-10(f) makes no provision for a class action under the Act, the Act specifically states that consumers are not prohibited from seeking redress under the common law or under other statutes for conduct that could be redressed under the Act. See § 8-19-15. The defendants misconstrue the nature of the certification order. As we have noted above, the trial court specifically declined *Page 1184 
to certify the fraud-based claims. We see no preemption in this case.
 Conclusion
We find no error in the trial court's class-certification order. That order is affirmed.
AFFIRMED.
Hooper, C.J., and Maddox, Houston, Cook, See, Brown, and Johnstone, JJ., concur.
Lyons, J., recuses himself.
[1] Laboratories Cheminova Internacional has not been served.